[If you need additional space for ANY section, please attach an additional sheet and reference that section.]




**FILED**
9/14/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

**RECEIVED**

AUG 14 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Hanoi Barbaro Acosta (87406-008)

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

United States of America,

_____

_____

_____

_____

Case No: 3:22-cv-50156

(To be supplied by the Clerk of this Court)

Hon. Philip G. Reinhard

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

_____    **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code** (state, county, or municipal defendants)

_____    **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331 U.S. Code** (federal defendants)

__X____    **OTHER** (cite statute, if known) ; Federal Tort Claim Act; 28 U.S.C.
§§ 1346(b)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

    A.    Name: Hanoi Barbaro Acosta

    B.    List all aliases: N/A

    C.    Prisoner identification number: 87406-008

    D.    Place of present confinement: FCI Talladega

    E.    Address: PMB 1000, Talladega, AL 35160

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.    Defendant: United States of America

           Title: Government

           Place of Employment: United States of America

    B.    Defendant: _____

           Title: _____

           Place of Employment: _____

    C.    Defendant: _____

           Title: _____

           Place of Employment: _____

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: _Acosta v. Maricopa County Sheriff's Sheriff's Office, et al., No. CV-09-467-SRB(MEA)_

B. Approximate date of filing lawsuit: _May 1, 2009_

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: _N/A_

D. List all defendants: _Joseph M. Arpiao; Unknown Nicholas; Daniel B. Durand._

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _USDC-D. Ariz.(Phoenix Division)._

F. Name of judge to whom case was assigned: _Susan R. Bolton._

G. Basic claim made: _Unauthorized digital cavity search was 4th Amend. violation._

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _Claim barred by PLRA, because no physical injury. Dismissal affirmed on appeal._

I. Approximate date of disposition: _November 23, 2011._

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL Lawsuit you (and your co-plaintiffs, if any) have filed in any state of federal court on the United States (Cont'd):**

A. Name of case and docket number: Acosta v. Shartle, et al., No. CV-18-216-TUC-RM.

B. Approximate date of filing lawsuit: February 23, 2019.

C. List all plaintiffs: N/A.

E. Court in which the lawsuit was filed: USDC-D.Ariz. (Tucson Division).

F. Name of judge to whom case was assigned: Rosemary Martinez.

G. Basic claim made: SIS fabricated an incident report to send Acosta to the SMU; USA liable for food poisoning.

H. Disposition of case: USA settled.

I. Approximate date of disposition: April 2, 2019.

******

A. Name of case and docket number: In re BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC, Case No. 20-10343.

B. Approximate date of filing lawsuit: Unknown.

C. List all plaintiffs: Unknown (Class action over 82,000 claimants).

D. List all defendants: Boy Scouts of America, Delaware BSA, LLC.

E. Court in which the lawsuit was filed: U.S. Bankruptcy Court of Delaware.

F. Name of judge to whom case was assigned: Laurie Silverstein

G. Basic claim made: Sexual abuse survivor claim.

H. Disposition of the case: Pending.

I. Approximate date of disposition: Currently pending.

******

A. Name of case and docket number: Acosta v. M. Bergmann, No. 21-cv-50194.

B. Approximate date of filing lawsuit: May 13, 2021.

3A.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## IV.   Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1.    The Court has jurisdiction of this action under 28 U.S.C. § 1346(a);

and the Federal Tort Claim Act.("FTCA").

2.    Plaintiff has exhausted all administrative remedies required by the Federal Bureau of Prisons ("BOP"), and has complied with all prerequisites to a suit under the FTCA in that: the Plaintiff timely filed an administrative claim for the matters in dispute in this action in the amountoof $2,500,000.00, with the BOP's North Central Regional Office. Which was denied.

3.    Plaintiff is a resident of the State of Alabama. However, the majority of the events described in this Complaint occurred in Thomson, Illinois.

4.    Defendant United States of America is sued under the FTCA for medical negligence, assault and battery, attempted murder, official misconduct, and intentional infliction of emotional distress by law enforcement officers of the Federal Bureau of Prisons, a branch of the United States Department of Justice-an agency of the United States.

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

H.A 5. ~~Defendant M. Bergmann was, at all relevant times, an employee and nurse/officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice. This defendant is sued in her individual capacity.~~

H.A. 6. ~~Defendant Counselor Barmes was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America. This defendant is sued in his individual capacity.~~

H.A. 7. ~~Defendant T. Cruze was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America. This defendant is sued in his individual capacity.~~

H.A 8. ~~Defendant Burlinson was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America. This defendant is sued in his individual capacity.~~

H.A 9. ~~Defendant~~ Walls was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America.

H.A 10. ~~Defendant~~ T. Mandeville was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States

4A.

Department of Justice, and an agency of the United States of America.

H.A

11.    ~~Defendant~~ Wilson was, at all times relevant, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United states of America.

H.A.

12.    ~~Defendant~~ Root was, at all relevant times, an employee and officer of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America.

### Facts

13.    Plaintiff ("Acosta"), and inmate Ruben Barrera ("Barrera"), both arrived at the Administrative United States Penitentiary–Thomson ("AUSP Thomson") on September 3, 2020. AUSP Thomson is located in Thomson, Illinois.

14.    Acosta and Barrera were initially assigned to the same cell upon arrival, and remained cell mates for a period of time thereafter. After approximately two months, Acosta and Barrera began having cell problems. Death threats were made between the cell mates, and at that point the inmate mutually considered themselves enemies.

15.    On November 10, 2020, however, in an attempt to avoid a physical altercation, the inmates wrote an Inmate Request, known as a "cop-out,"

4B.

H.A.

to ~~Defendant~~ Barmes apprising him of the cell situation. They requested to be separated. Citing safety concerns as the basis for the move.

16. During a unit round, Barmes advised Acosta and Barrera that if they wanted to be separated they would have to "fight."

17. Not wanting to fight, and be meted out more punishment than they were already suffering at the Special Management Unit ("SMU") at AUSP Thomson (which consists of a 23 and 1 lock down program), Acosta and Barrera both wrote a cop-out to Lieutenant Williamson explaining the situation and asking to be separated.

18. The cop-out, however, was answered by Lieutenant ("Lt") Bowman, whom was filling in for Lt. Williamson. Acosta and Barrera verbally explained the situation to Lt. Bowman at the cell door. They informed him that an altercation was imminent if they were not immediately separated. Lt. Bowman told the inmates that he would compromise a move if Acosta and Barrera could just hold off until Monday.

19. Acosta and Barrera reluctantly agreed. That night however, tempers flared, and in the a.m. the inmates remounted their efforts to be separated.

20. Acosta wrote a cop-out to Lt. Cron, asking him to be separated from Barrera. Lt. Cron came to Acosta's assigned cell to speak with him and Barrera. They informed Lt. Cron of the situation. He told Acosta that he would speak to ~~Defendant~~ Counselor Barmes, and if Barmes approved the

H.A.

4C.

move, he would do it. However, Lt. Cron did not otherwise separate the inmates on account that they were pleading imminent fight. Presumably because Barmes did not approve the move.

### Serious Medical Need

21.   That same night–November 13, 2020– Acosta became severely ill with COVID-19. His symptoms included: difficulty breathing, aching bones, body aches, loose stools, and fever of 101.5 degrees. Under the guise of Acosta's emergency medical condition, Lt. Cron overrode Barmes' refusal to separate Acosta and Barrera, and moved Acosta into an empty cell from Unit E-1, Cell No. 18 to a makeshift quarantine wing in Unit E-4, Cell No. 18.

### Attempted Murder and Assault and Battery



22.   On November 14, 2020, at approximately 1:07 pm, ~~Defendant~~ Root came to Acosta's cell door and ordered him to "cuff-up." Acosta asked him why? And Correctional Officer ("c/o") Root told him he did not know why. Acosta was suspicious of c/o Root's answer, and told Root he was not taking a cell mate, because he had a fever of over 104 degrees, and was otherwise too weak to defend himself should it be required. ~~Defendant~~ Walls came to Acosta's door and assured him that he was not getting a cell mate, but that he was going to medical to be examined instead. Because Acosta had recently contracted COVID-19, he believed Walls and cuffed-up.

23.   When the c/o's rolled his cell door, however, Acosta was surprised to see Barrera, and all his personal belongings being led to his assigned

4D.



cell. Acosta immediately informed the c/o's at his door that he could not cell with Barrera, because Barrera was his enemy. Barrera also made the protest that Acosta was his enemy. Moreover, ~~Defendant's~~ Walls, Root, and Wilson possessed firsthand knowledge of what was transpiring between Acosta and Barrera in the days leading up to November 14, 2020, because the request to be separated, due to the imminent threat of an altercation, was first made precisely to these c/o's.

24. Barrera physically refused to enter the cell. However, c/o Butterfeild told him, "if you don't go in there I'm going to slam you on your face spic." C/o Butterfield and Defendant Wilson had an interest in forcing Barrera into the cell to fight Acosta, because on the way over to the quarantine wing Barrera heard the c/o's placing a $100.00 or $20.00 bet that the "Mexican gets his ass kicked." Barrera reluctantly entered the cell.

25. The c/o's rolled the cell door closed, and ordered the inmates to fight. Faced with no other alternative, and still cuffed, Acosta and Barrera began to kick eachother. But the kicks were make believe, thus neither inmate was truly hurting each other.

26. Acosta was able to sweep Barrera off of his feet. He hoped that this would end the sadistic charade. However, Acosta was wrong. ~~Defendant~~ Walls ordered Acosta to the door to uncuff. Acosta complied. Then ~~Defendant~~ Walls ordered Acosta to assault Barrera while Barrera remained cuffed on the

4E.

H.A.

cell floor. Acosta refused the direct order stating, "I'm not doing that. Get this dude out of my cell, we're enemies!" ~~Defendant~~ Walls told Acosta, "if you don't beat his ass, we're gonna beat your ass!" Under duress, Acosta rolled Barrera over, and pretended to punch him in the midsection.

H.A.

27. Without warning ~~Defendant~~ T. Mandeville sadistically sprayed an excessive amount of O.C. pepper spray directly into the faces of Acosta and Barrera. ~~Defendant~~ Mandeville was aware that Acosta and Barrera both were at the height of their respective COVID-19 infections, as were the other c/o's that were present, because on November 14, 2020, Echo Unit Range 4-the location of the above described incident-was being used as a quarantine wing. Moreover, Barrera was being moved from Echo Unit Range 1 to Echo Unit Range 4 to be quarantined, because he had just tested positive for COVID-19. However, the correctional officers were deliberately indifferent to Acosta's serious medical needs, and instead assaulted him with mace to a degree that amounts to attempted murder-considering the difficulties breathing Acosta was suffering from due to the coronavirus infection even prior to being sprayed by ~~Defendant~~ Mandeville.

### Improper Pepper Spray Decontamination

28. With his lungs burning, and gasping for air, like a fish out of water, Acosta immediately submitted to hand restraints, begging the c/o's to let him out of the cell because he could not breathe-and certain that he was going to die. But instead, Acosta was re-cuffed and taken to a **hot** shower to be decontaminated. The hot water activated the chemical agent

4F.

that is O.C. pepper spray. It caused so much pain that Acosta could not stand it, and properly decontaminate. The pepper spray made the hot water feel like boiling water on Acosta's skin. Worse yet, the water made the pepper spray run from head to toe, including Acosta's genitals and anus. Moreover, because Acosta could not properly decontaminate, the pepper spray had a lasting effect of over 72 hours...for all of which Acosta was forced to stay inside without any fresh air, contrary to BOP policy.

**Conspiracy or Aiding and Abetting Attempted Murder and Assault and Battery**

29. While in the shower attempting to decontaminate, Acosta asked c/o Walls why he had forced him to fight Barrera? To which ~~Defendant~~ Walls replied, "we don't just let cellies separate. That's not how it works here. If you want to move, you fight. We've been telling you to beat Barrera's ass for a week. Why do you think we didn't move you?"

30. Acosta was then removed from the shower, and taken to see ~~Defendant~~ Bergmann to do a medical assessment. During the assessment Acosta informed Lt. Grecco, on camera, that his staff had uncuffed him so that he could assault Barrera. It is beleived upon confirmation, that Lt. Grecco never filed a complaint with the Office of Interanl Affairs, as mandated by BOP policy, because he was covering up the crimes and constitutional violations that were being committed by his staff.

31. During the medical assessment Acosta complained to ~~Defendant~~ M. Bergmann and told her that he could not breathe. ~~Defendant~~ Bergmann made entries in Acosta's medical file to reflect that his oxygen level was

4G.

H.A.

fine. ~~Defendant~~ Bergmann had to decontaminate Acosta's eyes, because the hot water only served to exacerbate the effects of the pepper spray. ~~Defendant~~ Bergmann did nothing more that a staged assessment for the camera, and pronounced Acosta medically stable. Afterward, Acosta was returned to his cell in the isolation unit. ~~Defendant~~ Bergmann provided no other assistance to ensure that Acosta's medical condition, which was a COVID-19 patient whom had just been pepper sprayed, did not devolve into something more serious. ~~Defendant~~ Bergmann's actions were more than medical malpractice or just her exercise of professional medical judgment or opinion. ~~Defendant~~ Bergmann was covering for the c/o's, and thereby conspired or aided and abetted an attempted murder and/or and assault and battery.

H.A.

32.    For example, ~~Defendant~~ Bergmann created a medical record that belies or omits facts pertinent to what really occurred on November 14, 2020. In her assessment record, Nurse Bergmann writes: "Inmate was adequately decontaminated at the beginning of the medical assessment." However, that was not true because Acosta was having trouble breathing and was not taken outside for fresh air as required by BOP policy. Nurse Bergmann writes: "Vital signs stable." That is also not true. Nurse Bergmann had just recorded a 100.5 degree fever, and knew, as Acosta's primary medical provider, that he was severely ill from COVID-19. And that being peppered sprayed could only worsen his condition. ~~Defendant~~ Bergmann incredulously writes: "No respiratory compromise noted." But it wasn't noted, because she did not note it. Acosta had just been pepper sprayed for crying out

4H.

H.A.

loud! Finally, Nurse Bergmann writes: "when asked if the inmate had any injuries he stated, 'I can't tell yet.'" Other than not being able to breathe, Acosta **could not** tell, at that moment, what internal injuries he was suffering from. It was, in fact, ~~Defendant~~ Bergmann's job to provide Acosta with adequate medical care to determine the extent of the damage caused by pepper spraying a COVID-19 patient. Especially given the novel nature of the pandemic. Rather, ~~Defendant~~ Bergmann did nothing to ensure Acosta's health and safety. On the contrary, every request to see a doctor was met by the same answer, "you gotta ride it out."

H.A.

33.   On November 14, 2020, at approximately 1:49 p.m., ~~Defendant~~ T. Mandeville fabricated and filed a falsified incident report in furtherence of the ~~named defendant's~~ conspiracy to attempted murder and assault and batter the Plaintiff for personal entertainment and gambling purposes. The Incident Report was filed in an effort to conceal the intentional tort(s) described above. The fabricated Incident Report was expunged, however, at a fair hearing where it was determined that the Barrera's medical record of the alleged fight did not reflect injuries consistent with a fight between Acosta and Barrera. Specifically, where Barrera was allegedly cuffed, and not able to block any of the attack Acosta was allegedly inflicting on him, according to c/o Mandeville.

H.A.

### ~~False Imprisonment and Official Misconduct~~

34.   ~~On April 30, 2021, Case Manager Ms. Smith, informed Acosta that he was not progressing to Level Three as scheduled, because he had allegedly~~

4I.

H.A.

~~track, and other recreational activities, attend meals with other prisoners, attend religious services, use the phone, emails, listen to bought music on his personal MP3, and watch rented movies on his personal tablet. Acosta separately and additionally seeks compensatory damages for the mental or emotional distress resulting from his prolonged confinement in segregation or in segregation-like conditions without due process of law. Moreover, Acosta seeks punitive damages against the named defendants, with the exception of the United States, for their willful and malicious conduct in attempting to murder Acosta, and then confining him to segregation-like conditions in the SMU at AUSP Thomson-a supermax facility by the United States Department of Justice's definition-without a hearing, in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution, and amounting to false imprisonment.~~

## Cause of Action

H.A.

50.     The actions of ~~Defendants:~~ Walls, Mandeville, Wilson, and Root as set forth in paragraphs 22-28 constitute attempted murder and assault and battery, in violation of Illinois common law. Under the Fedral Tort Claims Act, Defendant United States of America is liable to the Plaintiff for the unlawful actions of correctional officers; Walls, Mandeville, Wilson, and Root as they were acting within the scope of their employment as law enforcement officers of the Federal Bureau of Prisons, a branch of the United States Department of Justice, an agency of the United States of

4Q.

America.

H.A.

51.     The actions of ~~Defendants~~: Barmes, Walls, Mandeville, Wilson, Root, and Bergmann, as set forth in paragraphs 16, 29-33 constitute conspiracy and aiding and abetting an attempted murder and assault and battery, in violation of Illinois common law. Under the Federal Tort Claims Act, Defendant United States of America is liable to the Plaintiff for the unlawful actions of correctional officers: Barmes, Walls, Mandeville, Wilson, Root, and Bergmann, as they were acting within the scope of their employment as law enforcement officers of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and agency of the United States of America.

H.A.

52.     The actions of ~~Defendants~~ Barmes, Walls, Mandeville, Wilson, Root, and Bergmann as set forth in paragraphs 16, 22-33 constitute negligence and intentional infliction of emotional distress, in violation of Illinois common law. ~~Defendants~~: Barmes, Walls, Mandeville, Wilson, Root, and Bergmann had a duty of care and protection. Defendants breached their duty when Barmes told Acosta and Barrera that if they wanted to be separated they would have to "fight." Moreover, Defendants breached their duty of care when they conspired and aided and abetted eachother to: (1) force Barrera into Acosta's assigned cell, over both inmates' protest that they were enemies-especially given that it was done for the malicious and sadistic purpose of gambling and personal entertainment; and (2) excessively spraying Acosta, a COVID-19 patient, in the face with pepper spray at the height of his coronavirus infection, with deliberate

4R.

indifference to his serious medical needs, and in total disregard for his life, which amounts to an attempted murder and an assault and battery. This breach of their duty of care was done intentionally to inflict emotional distress, and constitutes negligence, in violation of Illinois common law, and **18 U.S.C. § 4042(a)**, and was the direct and proximate cause of the Plaintiff's pain and injury. Under the Federal Tort Claims Act, Defendant United States of America is liable to the Plaintiff for the unlawful actions of correctional officers: Barmes, Walls, Wilson, Mandeville, Root, and Bergmann, as they were acting within the scope of their employment as law enforcement officers of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America.

H.A.

53. The actions of Defendants: Barmes, Walls, Wilson, Root, Bermann, Cruze, and Burlinson; and Federal Bureau of Prisons employees: A. Ciolli, Warden, Ms. McKenzie, CMC; Mr. Borden, Unit Manager; Ms. Kraemer, Unit Manager; and Unknown Case Manager, as set forth in paragraphs 16, 22-33, 36, 38, 40-42, and 44-46 constitute official misconduct, in violation of Illinois common law. Defendant Barmes had a duty to protect the Plaintiff when the Plaintiff informed him that a fight was imminent if he was not separated from Barrera. Barmes breached that duty when he told Acosta that he had to "fight" if he wanted to be separated, in violation of 18 U.S.C. § 4042(a)(2); and 28 CFR § 541.27. Defendant Wilson also breached his duty of care when he gambled "$100 or $20" that the "Mexican gets his a** kicked," in violation of 18 U.S.C. § 4042(a)(2); and Program Statement,

4S.

H.A

and 44-46 constitute intentional infliction of emotional distress, in violation of 18 U.S.C. § 4042(a)(2); and Illinois common law. Under the Federal Tort Claims Act, Defendant United States of America is liable to the Plaintiff for the unlawful actions of Defendants Barmes, Walls, Wilson, Mandeville, Root, and Bergmann. As well as the actions and omissions of Warden Ciolli, CMC McKenzie, Unit Manager Borden, Unit Manager Kraemer, SIS Technician Currie, and an unknown case manager. As they were acting within the scope of their employment as correctional officers of the Federal Bureau of Prisons, a branch of the United States Department of Justice, and an agency of the United States of America.

58. As a direct and proximate result of the combined negligent and intentional actions of the *officers*, their agents, servants, and/or employees, the Plaintiff has suffered injury to his personal liberty, as well as mental, emotional, and physical injuries. Therefore, Defendant United States of America is liable to the Plaintiff for damages in the amount indicated below.

H.A

59. The actions of Defendant Barmes, as set forth in paragrapgh 16 violated Plaintiff's right to equal protection of the law under the Fifth Amendment to the United States Constitution, under a "class-of-one" theory, because similarly situated SMU inmates, like Job Lopez-Garcia and Daniel Michael Salinas were not informed that they had to "fight" if they wanted to separate. Defendant Barmes is liable to the Plaintiff for these unlawful actions that amount discrimination in the protection Plaintiff received at AUSP-Thomson.



liable to the Plaintiff for these unlawful actions that amount to discrimination resulting in unlawful imprisonment, loss of privileges; and interference with Plaintiff's access to the courts.

63. The actions of Defendants: Walls, Mandeville, Wilson, and Root, as set forth in paragraphs 22-27, violated Plaintiff's right to equal protection of the law under the Fifth Amendment to the United States Constitution, under a "class-of-one" theory, because similarly situated SMU inmates were not treated with pepper spray to care for their respective coronavirus infections. Defendants: Walls, Mandeville, Wilson, and Root are liable to the Plaintiff for these unlawful actions that amount to discrimination in the protection of Plaintiff's health and saftey while incarcerated at AUSP-Thomson.

### Prayer for Relief

A.    On the claims stated in paragrapghs 16, 22-33, 36, 38, 40-42, and 44-46, the Plaintiff asks the Court to enter judgment against Defendant United States of America.

B.    On the claims stated in paragraphs 16, 22-33, 36, 38, 40-42, and 44-46, the Plaintiff asks the Court to enter judgment against the Defendant United States of America, and hold Defendant United States of America liable to the Plaintiff for compensatory and general damages.

C.    On the claims stated in paragraph 36-37, the Plaintiff asks the Court to enter judgement against Defendant Cruze.

4Y.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

D. ~~On the claims stated in paragraphs 38 and 46, the Plaintiff asks the Court to enter judgment against Defendant Burlinson.~~

*H.A*

E. ~~On the claims stated in paragraphs 22-33, the Plaintiff asks the Court to enter judgment against Defendant: Walls, Mandeville, Wilson, and Root.~~

*H.A*

F. For the injuries that the Plaintiff suffered as a result of the claims stated in paragraphs 16, 22-33, ~~36, 38, 40-42, and 44-46,~~ the Plaintiff asks the Court to hold Defendant United States of America, ~~Bergmann, Barmes, Cruze, Burlinson, Walls, and Root jointly and severally~~ liable for compensatory or general damages; and court costs.

*H.A*

G. ~~For the claims stated in paragraphs 16, 22-33, 36, 40-42, and 44-46, the Plaintiff asks the Court to issue a declaratory judgement stating that the Defendants violated the Plaintiff's Fifth and Eighth Amendment constitutional rights.~~

*H.A.*

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.     Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.

Plaintiff requests that the Court render judgment against the Defendants in the sum to be shown at trial, but in no event less than $2,500,000.00 plus punitive damages in the sum of $150,000.00 against each defendant, with the exception of defendant United States of America, and any other relief the Court deems just and proper.

**VI.     The plaintiff demands that the case be tried by a jury.   ☒ YES     ☐ NO**

## CERTIFICATION

I, hereby certify that the foregoing amendments, in the form of a "blue" line striking the allegation was made by me, Hanoi Barbaro Acosta, and my initials, "H.A.", appear next to the paragraphs that have said alteration.

By: *Hanoi Acosta*

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief.  I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this __8th__ day of __August__, 20__23__

_____
(Signature of plaintiff or plaintiffs)

Hanoi Barbaro Acosta
_____
(Print name)

87406-006
_____
(I.D. Number)

FCI Talladega

PMB 1000
_____

Talladega, AL 35160
_____
(Address)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]